```
                    UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF WASHINGTON AT SEATTLE
_____

  RICHARD J. FULTON,              )
                                  )
              Plaintiff,          )   CASE NO. C15-00574JLR
                                  )
  v.                              )   SEATTLE, WASHINGTON
                                  )   April 5, 2016
  LIVINGSTON FINANCIAL, LLC, et al, )
                                  )   Telephone conference
              Defendants.         )
                                  )
_____

                  VERBATIM REPORT OF PROCEEDINGS
              BEFORE THE HONORABLE JAMES L. ROBART
                  UNITED STATES DISTRICT JUDGE
_____


  APPEARANCES:

  For the Plaintiff:        JASON D. ANDERSON
                            Anderson Law of King County
                            787 Maynard Avenue South, Suite B
                            Seattle, WA 98104


  For the Defendants:       JOHN P. RYAN
                            Hinshaw & Culbertson
                            222 N La Salle Street, Suite 300
                            Chicago, IL 60601


  Reported by:              NANCY L. BAUER, CCR, RPR
                            Federal Court Reporter
                            700 Stewart Street, Suite 17205
                            Seattle, WA 98101
                            (206) 370-8506
                            nancy_bauer@wawd.uscourts.gov
```

```
 1   April 5, 2016                                          10:00 a.m.
                               PROCEEDINGS
 2   _____

 3            THE COURT:  Good morning, counsel.  This is Judge

 4   Robart.  May I have appearances, please, so I can match

 5   voices to people?

 6            MR. RYAN:  Good morning, Your Honor.  This is John

 7   Ryan on behalf of the defendant.

 8            THE COURT:  Thank you.

 9            MR. ANDERSON:  And, Your Honor, this is Jason

10   Anderson, appearing on behalf of plaintiff.

11            THE COURT:  All right.  Counsel, I can do this in one

12   of two ways.  People are not going to be very pleased at the

13   end of this hearing.  I can either give you my ruling, and

14   then ask if you want to respond to it, or I can hear five

15   minutes of argument now, hopefully that does not repeat what

16   it is that you have already written, which I've had an

17   opportunity to review.

18       So, I guess the question is, which is the easiest way to

19   do this?

20       Mr. Anderson, do you have a preference?

21            MR. ANDERSON:  Your Honor, I would like to inform the

22   court that we do have mediation on Thursday of this week with

23   Judge Kallas of JDR.  And I'm wondering if it wouldn't make

24   sense to have -- if this is a possibility, have the court

25   issue a ruling on Friday, thus giving the parties an
```

1  opportunity to settle at mediation.  And even if the case
2  doesn't get settled, then we can settle the case at
3  mediation, perhaps.  That's more of a brainstorming idea on
4  my part, but I wanted the court to know we have this
5  scheduled.
6          THE COURT:  Well, since one of the things that I'll
7  be doing is sanctioning counsel, I'm not sure if your
8  settlement of the case is going to make that much of a
9  difference.
10     Mr. Ryan, do you have an opinion?
11         MR. RYAN:  No, Your Honor.  I will -- I believe we
12 can respond based upon your order, Your Honor.  I don't have
13 anything to add.
14         THE COURT:  All right.
15         MR. RYAN:  Your Honor, I would like to add, though,
16 in terms of my local counsel, I have not been able to
17 withdraw Ms. Olsen.  She's had a family emergency, and she
18 has not been able to work much lately.  I hope to have her
19 appearance withdrawn soon, and Marc Rosenberg will be my
20 local counsel.
21         THE COURT:  All right.  Well, let me tell you my view
22 of this matter.  I go back to Document 15, which is the joint
23 status report and discovery plan.  And in Paragraph 1, the
24 flat-out statement is, "Plaintiff alleges that he suffered
25 emotional distress, which defendant contends will require

discovery regarding plaintiff's medical treatment and history."

So as early as the joint status report, the defendants were on notice that there were claimed damages in this matter.

Then I'm going to jump to Document 27, which is defendant's motion to compel medical discovery. And in there, the statement is made, "Plaintiff has essentially no damages other than alleged medical claims." And then there's an interesting argument that there's going to have to be a continuance to allow discovery in a case that is already set for trial.

As part of 27, the defendant states, "Plaintiff provided supplemental responses, which said that plaintiff, quote, did not seek medical treatment related to the allegations in the complaint, unquote." And then the statement is made, "Therefore, based on plaintiff's responses to written discovery, he was not seeking any recovery for any medical condition or treatment."

That miserably confuses those two sentences. The first sentence said he didn't seek medical treatment, which defendant then, in a misrepresentation to the court, changes to he is not seeking any recovery.

It doesn't take a genius to figure out that that's not what the first sentence said, and it was not what was in the

1   joint status report.
2       That got flagged by me because I find that to be an
3   intentional misrepresentation to the court, made by Mr. Ryan.
4       In attempting to understand where that came from, I went
5   to Document 28, which is a declaration filed by Mr. Ryan.  In
6   Paragraph 4 of that, he states that "On October 30, 2015,
7   plaintiff responded to defendant's written discovery requests
8   by again stating that he has not received medical treatment
9   as a result of defendant's conduct."  This is October 2015.
10  "Plaintiff stated that he did not seek, quote, formal medical
11  treatment for the stress, worry, and inconvenience brought on
12  by defendant's, closed quote, conduct."
13      Stress, worry, and inconvenience is the same language of
14  the same concepts that are used in the original joint status
15  report.
16      In Paragraph 6, the statement is made, "On November 18,"
17  shortly after the date referenced in Paragraph 4, "plaintiff
18  provided supplemental responses to written discovery.
19  Plaintiff provided supplemental responses to say that he did
20  not seek medical treatment related to the allegations in the
21  complaint."  Then Mr. Ryan says, "Thus, I believed that
22  plaintiff was not seeking recovery for any medical condition
23  or treatment."
24      You know, the court really isn't interested in what
25  Mr. Ryan believes.  The question is what's in the pleadings,

|     |                                                                                     |
| --- | ----------------------------------------------------------------------------------- |
| 1   | and the pleadings are that he was seeking damages for formal                        |
| 2   | medical treatment, or he was seeking damages for stress,                            |
| 3   | worry, and inconvenience brought on by the defendant's                              |
| 4   | conduct.                                                                            |
| 5   |     The thing that's perplexing to me in that is, in Paragraph                      |
| 6   | 13, the statement is made, "At this point," referring to                            |
| 7   | March 2016, "after repeatedly denying a medical basis for his                       |
| 8   | claim, plaintiff now asserts a medical claim, but declines to                       |
| 9   | provide relevant documents."                                                        |
| 10  |     That's another misstatement to the court, because the                           |
| 11  | statement, "He has never sought damages based on" what are                          |
| 12  | described as medical, and I would include in that stress,                           |
| 13  | worry, and inconvenience, sleepless nights, whatever else, is                       |
| 14  | a direct misrepresentation to the court.                                            |
| 15  |     There is then filed in this matter the motion to compel,                        |
| 16  | which is dated the same, March 17, 2016, in which the                               |
| 17  | statement is repeatedly made, "The plaintiff has never sought                       |
| 18  | damages for any medical condition."                                                 |
| 19  |     I guess that I'm supposed to believe that Mr. Ryan's                            |
| 20  | belief as to what was being sought has more weight than does                        |
| 21  | the plaintiff's direct statements repeatedly saying that he                         |
| 22  | was seeking damages.                                                                |
| 23  |     So that takes me to the last thing that I would like to                         |
| 24  | refer to, which is the defendant's response to the motion.                          |
| 25  | That's found in the -- actually, it's their reply, found in                         |

|    |                                                                          |
|----|--------------------------------------------------------------------------|
| 1  | the docket at 30, defendant's reply on motion to compel or              |
| 2  | exclude, once again on Hinshaw & Culbertson letterhead, and             |
| 3  | signed by Mr. Ryan.                                                      |
| 4  | In Paragraph B of that, there is a quote saying,                        |
| 5  | "Information in documents are discoverable if they are                  |
| 6  | relevant and nonprivileged," citing *Seattle Times v.*                  |
| 7  | *Rhinehart*, a 1984 case.                                                |
| 8  | There then is the statement, and I'm quoting from this                  |
| 9  | pleading, "In the context of discovery to be, quote,                    |
| 10 | relevant, unquote, evidence merely needs to be, quote,                  |
| 11 | reasonably calculated to lead to the discovery of admissible            |
| 12 | evidence, unquote," citing *Brown Bag Software*, a 1992 Ninth           |
| 13 | Circuit case, quoting Federal Rule of Civil Procedure                    |
| 14 | 26(b)(1).  There is then a quote from the *Amgen* case from the         |
| 15 | Western District of Washington, 1994.                                    |
| 16 | I am disbelieving that any professional law firm would be              |
| 17 | citing a 1992 and 1994 case about Federal Rule of Civil                 |
| 18 | Procedure 26(b)(1), when it was amended December 1st, 2015,             |
| 19 | which dramatically changed the landscapes for these types of            |
| 20 | motions.  That's just plain old malpractice, in addition to             |
| 21 | being unprofessional and just wrong.                                     |
| 22 | So when Mr. Ryan speaks, he can tell me who wrote this.                 |
| 23 | But we're going to find out who did it, and there are going             |
| 24 | to be some consequences that go with it.                                 |
| 25 | So my ruling will be, in regards to the motion to compel,               |

1 I am going to grant it in part and deny it in part. I am
2 going to grant it in part in that I am going to order the
3 plaintiff to provide the medical records, if they exist, for
4 the doctor's diagnosis of high blood pressure or increased
5 blood pressure being due to the conduct of the defendants. I
6 am not going to order a deposition, and I'm not going to
7 order any further medical records to be disclosed.
8 In terms of the improperly noted motions that ask for a
9 continuance or ask for an exclusion of medical evidence, I'm
10 going to deny those, because this case is going to trial and
11 the jury will get its opportunity to see what they think of
12 the defendant's conduct in this matter.
13 Mr. Ryan, who wrote your reply?
14 MR. RYAN: Your Honor, it was a combination of myself
15 and local counsel. Your Honor, if I may --
16 THE COURT: Well, let me finish, and then I'm going
17 to give you your chance.
18 MR. RYAN: Okay.
19 THE COURT: Who wrote the section on the 1992 Civil
20 Rule 26(b)(1)?
21 MR. RYAN: It was combined efforts between myself and
22 local counsel.
23 THE COURT: All right. Well, then, I am going to
24 direct that pleading be provided to Kevin Burke, Robert
25 Shannon, and Paul Boken, who I understand to be the partners

1  in charge of the Hinshaw office in Chicago, with the
2  explanation that the court is entering sanctions against a
3  Hinshaw lawyer for quoting provisions of the civil rules that
4  are badly out of date, and also making direct
5  misrepresentations to the court. And I am awarding terms to
6  the plaintiff for the amount of expenditure that was done
7  responding to the motion in this matter. That is the court's
8  tentative ruling.
9      Mr. Ryan, I'll hear from you.
10         MR. RYAN: Your Honor, would you like a written
11 submission, or an oral submission?
12         THE COURT: You can just talk to me right now.
13         MR. RYAN: Your Honor, it was never my intent to, at
14 any time, misrepresent the facts of the case to the court.
15     In terms of the joint status report at the beginning,
16 it -- it should have been clearer, to say that it was
17 defendant's position that medical discovery was needed in
18 this case. Plaintiff took the position that medical
19 discovery was not needed.
20     I asked for medical discovery, and plaintiff told me that
21 they were not going to seek any -- or present any evidence of
22 medical testimony, or he was not going to seek things such as
23 blood pressure.
24     In that -- once I -- he did go see a doctor for his
25 alleged emotional distress claim. The first time I heard

1  that was on February 1st at his deposition.  Prior to that, I
2  was okay with their discovery answers, because they told me
3  that they weren't going -- that he did not receive any
4  medical treatment for his emotional distress damages claim.
5  That's how I was interpreting their responses to
6  Interrogatories 18 through 25, and then the subsequent
7  responses to 18 through 25.
8      And then after I took plaintiff's deposition, we had some
9  discussion as to whether he was going to seek his claim for
10 high blood pressure in terms of any emotional distress
11 damage, and because, obviously, a layperson can't testify as
12 to high blood pressure.
13            THE COURT:  That's not correct, sir, but go ahead.
14            MR. RYAN:  But maybe they can testify to it in terms
15 of timing.  And so I -- then we had discussion about maybe
16 entering a stipulation, and when we couldn't agree to a
17 stipulation, plaintiff responded by supplementing their
18 interrogatories indicating his primary care doctor for his
19 high blood pressure, and it was related to my client's
20 conduct.
21     At that point is when I -- defendants then filed their
22 motion, because we don't have any medical -- at that point we
23 didn't have any medical records or any treating physicians
24 who ever treated plaintiff for such a condition.
25     Your Honor, I'd also like to point out, we are -- if our

motion for summary judgment is not granted, we are completely fine with going to trial. It was just a matter of if there was going to be medical testimony on things such as high blood pressure, we would like to have had discovery on this medical issue, because we didn't have any identity of any of his doctors until February 26th, I believe. The last week of February was the first time we found out the name of a doctor.

THE COURT: Mr. Ryan, here's my problem. You're back to trying to dodge again. You've known since this case was filed they were seeking damages for things such as stress, worry, and inconvenience. That's been in this case since the very beginning. There is a difference between that and saying recovery for medical conditions or treatment.

He can testify as to what his physical symptoms are. As I understand it, he didn't go to a doctor for any treatment until relatively late, and I'm not questioning you for that. What I'm questioning you about is the fact that you have represented to the court repeatedly that he is not seeking damages for what you describe as medical conditions, and in that I would include stress, worry, and inconvenience, when you know that's not true.

MR. RYAN: Your Honor, that was a complete -- maybe -- maybe I didn't articulate it clearly enough in my brief. I would not -- I have no problem with plaintiff

testifying about his stress, worry, and lack of sleep.  I have no problem with that.

And I wouldn't have brought this motion if it was just based upon his what plaintiff characterized as garden-variety emotional distress claims.  What concerned me was when he said that he went to see his doctor and is now on medication for high blood pressure.  That's what triggered all of this.

I didn't mean to put his medical condition at issue.  I meant more so, like, going to the doctor for those medical conditions.

I'm not trying to nor was this motion trying to eliminate his emotional distress claim or eliminate -- or try to bar plaintiff from discussing his emotional distress claim, such as lack of sleep or anything in that way.  It was more in terms of his high blood pressure claim, and getting treatment for those types of ailments.

I was not, by any means, saying he never alleged that he didn't have any emotional distress claims such as lack of sleep.

THE COURT:  Sir, let me read to you what you wrote in your brief.  "Plaintiff be precluded from presenting any evidence or testimony regarding any of his medical conditions."

I can't, with a straight face, sit here and have you tell me, oh, that doesn't mean that he can't talk about stress,

1  worry, inconvenience. That just means that he didn't go to a
2  doctor for it.
3      You are a better lawyer than that.
4          MR. RYAN: Your Honor, I'm -- I'm -- I'm being most
5  honest with the court. I had conversations with local
6  counsel -- not with local counsel, but opposing counsel. I
7  was completely fine, and that's where our stipulation was
8  going; about how I was okay about the plaintiff getting up
9  there and testifying as to his lack of sleep and all that.
10 It was the idea of him getting up there and starting to
11 testify about his high blood pressure and what was the cause
12 of his high blood pressure, that's what concerned me.
13         THE COURT: Well, you wrote in your own declaration,
14 sir, "After repeatedly denying a medical basis for his claim,
15 plaintiff now asserts a medical claim but declines to provide
16 relevant documents." That's Paragraph 13 of your
17 declaration.
18     He has not denied a medical basis for his claim. He's
19 been telling you for a long time that he's got these
20 conditions but that he hasn't been to a doctor about them.
21 And I, frankly, find this to be, you know, interesting
22 aggressiveness, but it's got no place in my courtroom.
23         MR. RYAN: Your Honor, I, by no means, intended to
24 mislead you. And had you issued an order, I would have
25 clarified it with opposing counsel.

1  I was not looking to preclude plaintiff from testifying in
2  regards to things that I believe he can testify about. The
3  one thing that concerned me is when we went in there and he
4  started talking about his high blood pressure and how he went
5  to go see his doctor about the high blood pressure.
6  I believe the plaintiff testified that at the time all
7  this happened, he was not on medication, but right after it
8  happened in 2012, he then was placed on high blood pressure
9  medication.
10  So I don't believe that the truth was relatively recent.
11  I believe it was from a while ago. And the whole motion was
12  based on this high blood pressure thing and getting into the
13  cardiac thing, and getting out of what's been characterized
14  as garden-variety emotional distress and getting into this
15  case involving whether or not my client's alleged conduct is
16  causing his high blood pressure, and then, therefore, a
17  variety of cardiac conditions.
18  THE COURT: All right, counsel. I've heard you.
19  Would you care to comment on your text in regards to Rule
20  26(b)(1)?
21  MR. RYAN: Yes, Your Honor. I understand that it was
22  amended on December 1, 2015. I was merely citing -- we were
23  merely citing general case law as an idea of what relevance
24  is. That's all we were doing.
25  I didn't -- there was a new case out of the Southern

1   District of Indiana, which followed my reasoning of the Ninth
2   Circuit case law that I provided you, by Judge Baker, which I
3   can print and provide the court.
4       But by no means was I, once again, trying to mislead the
5   court as to what relevance is.  Again, I was just saying that
6   if he is seeking medical treatment for high blood pressure,
7   and if he did this back when it occurred back in 2012, then
8   those documents were relevant.
9       Our dispute as to -- our dispute regarding whether his
10  medical discovery was relevant was whether I'm allowed to
11  obtain his medical records and the identity of his doctors.
12  And the plaintiff was stating that I was not allowed to do
13  that, and I was saying that I was, because he has now said
14  that he has high blood pressure and he sought treatment for
15  that.
16      If he is just going to get up there and testify about lack
17  of sleep, as plaintiff described it, the garden-variety
18  emotional distress, I have no interest in getting into
19  medical discovery.
20          THE COURT:  Sir, let me read you again what you
21  wrote, which is relevant, "is reasonably calculated to lead
22  to the discovery of admissible evidence" language from a rule
23  that was specifically amended to delete that and which has
24  been the subject of immense publicity, I assume including in
25  your own firm, that they changed the rules.  And then on

```
 1   March 31st, you write something that is not only out of date,
 2   it's not the law.  How do you do that, sir?
 3           MR. RYAN:  Your Honor, again, I apologize, and I put
 4   myself at the mercy of the court.  I'm not trying to --
 5           THE COURT:  If I had more information about your
 6   client, I'd have you contact their general counsel and also
 7   include them in the list of people who I want to have read
 8   this.  But since I can't find out anything about Livingston
 9   Financial, I can't find out who their general counsel is.
10       Anyway, I'm sure Mr. Burke, Mr. Shannon, and Mr. Boken
11   will be sufficient, that you ought not be going around citing
12   out-of-date, wrong law to a federal court.
13       I hang out with Judge Castillo and Former Judge Holderman,
14   and they assure me the standard of practice is high in
15   Chicago.  This does not meet the standard of practice in the
16   Western District of Washington.
17       Anything else you'd like to say, sir?
18           MR. RYAN:  No, Your Honor.
19           THE COURT:  All right.  Do you understand my order,
20   then, in this matter?
21           MR. RYAN:  Yes, Your Honor.
22           THE COURT:  All right.  I am officially sanctioning
23   you under my inherent authority to control discovery, and
24   when you apply for pro hac vice status in other districts, if
25   they ask if you have been sanctioned, you're going to have to
```

say yes. If I had known that this is how you practiced, I'm not sure I would have permitted you to appear in this district.

If you want to file a supplemental written response on that, that's fine, but for the rest of this, I'm going to stay with my oral ruling, which is, they've got to give you the information in regards to the doctor. You should be aware, sir, that, generally, in the state of Washington, we have a pretty liberal standard on that garden-variety medical damages question. He's going to be able to testify that he didn't take blood pressure medicine before, and then subsequently he did take it, but he's not going to be able to say that the cause of it was your client. He can talk about his stress, he can talk about his lack of sleep, he can talk about his worry. Those are medical conditions, but they're not deemed to be invoking the necessity of an expert medical opinion.

As to the rest of this, I'm just embarrassed for your firm. I'm astounded that a firm that I always thought of as a very prominent, very successful, very professional firm is engaged in this kind of conduct.

Mr. Anderson, you have not had a chance to talk. Do you have any questions about my ruling?

MR. ANDERSON: No, Your Honor.

I'll inform the court that yesterday we got the response

1   to the subpoena that the defendants had issued, so to the
2   extent that there are medical records and injuries described,
3   January 1st, 2012, to the present, those have been produced
4   by the doctor's office pursuant to the subpoena.  There's
5   about 200 pages of records in there.  I haven't had a chance
6   to review all of them.  They do cover the times at issue
7   here.
8           THE COURT:  The only thing you need to produce, sir,
9   is the entry related to the diagnosis of high blood pressure
10  and the treatment.  I really don't think that the defendant
11  needs to know about your client's colonoscopy.
12          MR. ANDERSON:  Fair enough.  As far as the rest of
13  the court's ruling, I have no questions about that.
14          THE COURT:  I would like your motion for fees and
15  costs associated with responding to the motion to compel
16  discovery.  Let's get that on file by, not this Friday, but
17  next Friday.
18          MR. ANDERSON:  I understand, Your Honor.  Thank you.
19          THE COURT:  Counsel, any questions for the court?
20          MR. RYAN:  No, Your Honor.  Thank you.
21          MR. ANDERSON:  Thank you, Your Honor.
22          THE COURT:  All right.  We'll be in recess.  Thank
23  you.
24                  (THE PROCEEDINGS CONCLUDED.)
25

# C E R T I F I C A T E

       I, Nancy L. Bauer, CCR, RPR, Court Reporter for the United States District Court in the Western District of Washington at Seattle, do hereby certify that I was present in court during the foregoing matter and reported said proceedings stenographically.

       I further certify that thereafter, I have caused said stenographic notes to be transcribed under my direction and that the foregoing pages are a true and accurate transcription to the best of my ability.

       Dated this 7th day of April 2016.


       /S/   Nancy L. Bauer

       Nancy L. Bauer, CCR, RPR
       Official Court Reporter