UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICHARD J. FULTON,

                   Plaintiff,

          v.

LIVINGSTON FINANCIAL LLC, et
al.,

                   Defendants.

CASE NO. C15-0574JLR

ORDER

## I.   INTRODUCTION

This matter comes before the court on Plaintiff Richard J. Fulton's motion for an
award of attorneys' fees and costs.  (Mot. (Dkt. # 45).)  Defendants Livingston Financial,
LLC, and Nelson & Kennard agree that attorneys' fees and costs are available but oppose
the amount that Mr. Fulton seeks.  (Resp. (Dkt. # 46).)  In addition, sanctions on
Defendants' counsel, John P. Ryan of Hinshaw & Culbertson, remain at issue.  (*See*
Sanctions Memo (Dkt. # 36).)  The court has considered the parties' submissions, the

ORDER- 1

1    appropriate portions of the record, and the relevant law.[1]  Considering itself fully advised,

2    the court GRANTS in part and DENIES in part Mr. Fulton's motion, AWARDS Mr.

3    Fulton $41,370.00 in attorney's fees and $2,102.77 in costs, and SANCTIONS Mr. Ryan

4    as described herein.

5                              **II.    BACKGROUND**

6           On April 13, 2015, Mr. Fulton filed suit against Defendants for allegedly violating

7    the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and several

8    Washington statutes.  (Compl. (Dkt. # 1).)  Defendants allegedly wrongfully served Mr.

9    Fulton in a collection lawsuit filed against another individual.  (*Id.* ¶¶ 10-12, 17-20.)  Mr.

10   Fulton sought actual damages, statutory damages, treble damages, and reasonable

11   attorneys' fees and costs.  (*Id.* ¶¶ 77-81.)

12          After extensive negotiations and a mediation, the parties settled the underlying

13   lawsuit.  (Anderson Decl. (Dkt. # 45-1) ¶ 3.)  The settlement awards Mr. Fulton

14   $30,000.00 plus reasonable attorneys' fees and costs, which amounts are to be

15   determined by the court.[2]  (*Id.*)  Mr. Fulton's attorney, Jason Anderson, spent 153.3 hours

16   working on the case-in-chief and fees petition and has a "usual hourly rate of $350.00,"

17   //

18   //

19

20          [1] No party has requested oral argument, and the court finds oral argument unnecessary.
21   *See* Local Rules W.D. Wash. LCR 7(b)(4).

22          [2] These facts constitute the extent of the court's knowledge of the settlement, which
     contains confidential provisions.  (Anderson Decl. ¶ 4.)

ORDER- 2

1   which amounts to a total lodestar of $53,655.00.[3]  (*Id.*; *see also id.* ¶ 16, Ex. A

2   ("Anderson Billing Records") at 1-10.)  After updating that amount to include the

3   $6,615.00 in attorneys' fees incurred in drafting the reply brief to his motion for fees, Mr.

4   Fulton requests a total of $60,270.00 in attorneys' fees.  (Reply (Dkt. # 49) at 6;

5   Anderson Supp. Decl. (Dkt. # 49-3) ¶ 2-3.)  The $2,102.77 in costs that Mr. Fulton seeks

6   consists of the filing fee, service of process costs, deposition transcript costs, and

7   mediation expenses.  (Anderson Decl. ¶¶ 27-28.)

8       Defendants oppose Mr. Fulton's request for attorneys' fees on several grounds.[4]

9   First, Defendants contend that $250.00 per hour is the more reasonable rate to apply for

10  Mr. Anderson's services.  (Resp. at 3-6.)  Defendants also argue that a 25 percent or

11  greater downward adjustment of Mr. Anderson's lodestar calculation is appropriate due

12  to Mr. Fulton's role in prolonging settlement negotiations.  (*Id.* at 6-7.)  Finally,

13  Defendants ask the court to limit Mr. Fulton's fees-on-fees award.[5]  (*Id.* at 8.)

14      Mr. Fulton's motion is now before the court.

15  //

16  //

17  //

18  ―――――――――――――――――――

19  [3] Although Mr. Fulton's son, who is a lawyer, attests that he provided up to 100 hours of
    support and assistance with the case, Mr. Fulton does not seek attorneys' fees based on his son's
20  lodestar.  (Fulton Decl. (Dkt. # 45-2) ¶¶ 5-6.)

21  [4] Defendants do not object to Mr. Fulton's request for costs.  (*See generally* Resp.)

22  [5] "Fees-on-fees" are "fees incurred while pursuing [fees incurred while doing work on the
    underlying merits of the action]."  *Thompson v. Gomez*, 45 F.3d 1365, 1366 (9th Cir. 1995).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

# III.   ANALYSIS

## A.   Legal Standard

"In the case of any successful action to enforce" liability under the FDCPA, the plaintiff is entitled to recover "costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3).  This fee award is mandatory. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).  A settlement agreement providing for the court's determination of reasonable attorneys' fees and costs can constitute a "successful action." *Id.*

The touchstone for calculating reasonable attorneys' fees is the lodestar method. *Id.* (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (per curiam)).  "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996).  The Ninth Circuit looks to the factors enumerated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), to determine the overall reasonableness of a fee request. *See Ferland*, 244 F.3d at 1149 n.4 (looking to the *Kerr* factors in the FDCPA context).  The *Kerr* factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

1  *Kerr*, 526 F.2d at 70.  "[T]he district court may, if circumstances warrant, adjust the

2  lodestar to account for other factors which are not subsumed within it."  *Ferland*, 244

3  F.3d at 1149 n.4 (citing *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1046

4  (9th Cir. 2000)).

5  **B.  Motions to Strike**

6        Both parties have moved to strike evidence submitted in support of the opposing

7  parties' briefing.  (*See* Reply at 2-3 (seeking to exclude portions of the Ryan Declaration

8  and the Rosenberg Declaration for lack of foundation and hearsay); Surreply (Dkt. # 50)

9  at 2-3 (requesting to strike portions of the Supplemental Fulton Declaration and the

10  Supplemental Anderson Declaration for containing improper argument and being

11  improperly submitted, as well as the "'Supplemental Time Entries' for Plaintiff's fee

12  petition").)  The court addresses these motions to the extent they implicate evidence that

13  impacts the court's determination.

14        Mr. Fulton requests that the court strike several paragraphs of the Ryan

15  Declaration as lacking foundation.  (Reply at 2 (citing Ryan Decl. (Dkt. # 48)).)  Mr.

16  Ryan attests that he is "counsel for the Defendant" and has "personal knowledge of the

17  facts contained in []his declaration unless otherwise qualified or stated."  (Ryan Decl.

18  ¶ 1.)  Mr. Ryan appears to lack personal knowledge as to several paragraphs of his

19  declaration.  (*See, e.g.*, *id.* ¶¶ 2 (attesting to an initial demand that Mr. Fulton provided

20  "[p]rior to [Mr. Ryan's] involvement" with the case), 6 (speculating that if Mr. Fulton

21  comported himself differently during the early stages of the case, the matter "likely could

22  have been resolved without most of the litigation for which Plaintiff now seeks attorneys'

ORDER- 5

1   fees").)  However, Mr. Ryan lays sufficient foundation as to paragraphs four and five,

2   which are the only two paragraphs on which the court relies in deciding this motion.  (*Id.*

3   ¶¶ 4-5.)  Accordingly, the court denies Mr. Fulton's request to strike paragraphs four and

4   five of Mr. Ryan's declaration.

5        In conjunction with his reply brief, Mr. Fulton submitted the declaration of

6   Richard J. Welt.  (Welt Decl. (Dkt. # 49-1).)  Based on his 36 years of experience as a

7   practicing attorney, 10 years in the Seattle legal market, and personal experience with Mr.

8   Anderson's work product, Mr. Welt attests that Mr. Anderson's hourly rate of $350.00 is

9   "low for a downtown Seattle lawyer of his caliber and experience."  (*Id.* ¶¶ 2, 6-9, 11-12.)

10  Defendants moved to strike that declaration because Mr. Fulton improperly submitted the

11  declaration in conjunction with Mr. Fulton's reply brief rather than with Mr. Fulton's

12  motion.  (Surreply at 2.)  The court agrees with Defendants and strikes Mr. Welt's

13  declaration.

14       Finally, Defendants request that the court strike the supplemental time entries

15  submitted in support of Mr. Fulton's request for fees-on-fees, but Defendants provide no

16  rationale supporting this request.  (Surreply at 3.)  The court denies Defendants' motion

17  to strike the supplemental time entries submitted in conjunction with Mr. Fulton's reply.

18       Besides the parts of the record specifically addressed above, none of the

19  purportedly improper evidence that the parties address in their motions to strike impacts

20  the court's determination herein.  Accordingly, the court denies as moot the remaining

21  aspects of Mr. Fulton's and Defendants' motions to strike.

22

ORDER- 6

1    **C.      Attorneys' Fees Under the FDCPA**

2          The parties dispute what constitutes a reasonable hourly rate for Mr. Anderson,

3    whether a downward adjustment of the lodestar is warranted, and whether to limit

4    fees-on-fees.  The court addresses these disputes in turn.

5          1.   Reasonable Hourly Rate

6          "[T]he established standard when determining a reasonable hourly rate is the 'rate

7    prevailing in the community for similar work performed by attorneys of comparable skill,

8    experience, and reputation.'"  *Camacho*, 523 F.3d at 979 (quoting *Barjon*, 132 F.3d 496,

9    502 (9th Cir. 1997)).  For purposes of determining a reasonable hourly rate, the relevant

10   "community" is the Western District of Washington.  *See id.*  The court should also

11   consider the experience, skill, and reputation of the attorney requesting fees.  *See*

12   *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).

13         "The burden is on the fee applicant to produce satisfactory evidence—in addition

14   to the attorney's own affidavits—that the requested rates are in line with those prevailing

15   in the community for similar services by lawyers of reasonably comparable skill,

16   experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  Affidavits

17   from a party's attorney and other attorneys regarding prevailing fees in the community

18   and rate determinations in other cases constitute evidence of the prevailing market rate.

19   *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

20   However, such declarations are not conclusive evidence and are subject to rebuttal

21   evidence and argument from the fee petition's opponent.  *Gates v. Deukmejian*, 987 F.2d

22   1392, 1397-98 (9th Cir. 1992).

1    Mr. Anderson attests that since 2014, he has charged $350.00 per hour in "FDCPA

2  and related consumer-protection matters" taken on a contingent basis.  (Anderson Decl.

3  ¶ 17.)  Mr. Anderson identifies two cases in which he was awarded fees calculated using

4  approximately that rate—a 2015 case in which a Washington state court awarded $350.00

5  per hour and a 2013 case in which a Washington state court awarded $325.00 per hour.

6  (*Id.* ¶¶ 18-19.)  Mr. Fulton has also provided the declaration of his son, who is also an

7  attorney representing Mr. Fulton.  (Fulton Decl. ¶¶ 1-2, 21, 23.)  Mr. Fulton's son's

8  billing rate is $400.00 per hour, and he finds Mr. Anderson's rate of $350.00 per hour to

9  be reasonable in light of the facts of this case.  (*Id.* ¶¶ 46-50.)

10    In response, Defendants identify three FDCPA fee petitions decided in the

11  Western District of Washington in the last five years.  (Resp. at 3-5.)  In the first case, the

12  court concluded that an hourly rate of $225 per hour was appropriate for an attorney who

13  had practiced law in Washington for more than 30 years and had filed 16 FDCPA cases

14  in the Western District of Washington.  *Ashley v. Physicians & Dentists Credit Bureau,*

15  *Inc.*, No. C10-0996JPD, 2011 WL 3626547, at *3-4 (W.D. Wash. Aug. 17, 2011).  In the

16  second case, despite a dearth of evidence presented by the moving party, the court found

17  that attorneys' rates "ranging from $175 to $300" were "reasonable for representing

18  individual consumers in the Seattle area."  *Rebic v. Credit Int'l Corp.*, No. C10-5323RAJ,

19  2011 WL 4899979, at *3 (W.D. Wash. Oct. 14, 2011).  Finally, in 2012 this court

20  awarded rates of $265 for the plaintiff's firm's founding partner, who had over a decade

21  of experience, $225 for another lawyer with over a decade of experience, and $160 for a

22

1  lawyer with less than one year of experience at the firm.  *Rodriguez v. Nancy A. Smith &*

2  *Assocs.*, No. C12-5252RBL, 2012 WL 5207545, at *3 (W.D. Wash. Oct. 22, 2012).

3       All three of these cases are several years old.  The court therefore treats *Ashley*,

4  *Rebic*, and *Rodriguez* as somewhat dated points of reference.  *See Charlebois v. Angels*

5  *Baseball LP*, 993 F. Supp. 2d 1109, 1121 (C.D. Cal. 2012) ("While past fee rates may be

6  useful evidence to show a floor below which a court's fee calculations should not drop,

7  past fee rates in no way support the conclusion that a court should reduce the fees in the

8  present case to the rates awarded in the past.").  Furthermore, as Mr. Fulton identifies,

9  those cases differ in several manners from this case.  (*See* Reply at 4.)  However, Mr.

10  Fulton fails to show why those differences warrant a $350.00-per-hour rate for Mr.

11  Anderson.  Mr. Anderson has approximately ten years of experience, mostly as counsel

12  for "major national banks and debt buyers in defensive litigation for FDCPA and other

13  alleged violations."  (Anderson Decl. ¶ 7.)  But Mr. Fulton fails to show how this renders

14  Mr. Anderson more experienced, skilled, or reputable than the attorneys in *Ashley*, *Rebic*,

15  and *Rodriguez*.  *See Schwarz*, 73 F.3d at 906.  Moreover, the hourly rates approved in

16  those Western District of Washington cases, when adjusted to reflect the passage of

17  several years since this court decided them, comport with this court's "own knowledge of

18  customary rates and [its] experience concerning reasonable and proper fees."  *Ingram v.*

19  *Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (per curiam).

20       The court concludes that $300.00 per hour is a reasonable rate for Mr. Anderson's

21  services in this case.  The court therefore substitutes a $300.00-per-hour rate for the

22  $350.00-per-hour rate that Mr. Fulton used to calculate his attorneys' fees.

2.  <u>Downward Adjustment of Lodestar</u>

Defendants seek a downward adjustment of the lodestar based on Mr. Fulton's comportment in settlement negotiations.  (Resp. at 6-7.)  Defendants make several arguments to this effect, but their most compelling is that after Mr. Fulton "lowered his demand to $59,000.00 on October 21, 2015," he then refused to "apportion how much of the demand was for damages and how much was for fees/costs."  (*Id.* at 7; *see also* Ryan Decl. ¶ 5.)  Defendants argue that this refusal precluded them from making an offer of judgment in late October 2015.  (*Id.*)  As of October 31, 2015, Mr. Fulton's counsel had billed only 37.5 hours—a number that has since multiplied by a factor of more than four.  (Anderson Billing Records at 1-4.)  Defendants therefore contend that but for Mr. Fulton's refusal to break down his $59,000.00 demand, much of Mr. Fulton's attorneys' fees could have been avoided.  (Resp. at 7.)  Mr. Fulton offers no substantive response to this argument.  (*See generally* Reply.)

The court agrees that Mr. Fulton's refusal to break down his $59,000.00 demand between damages, attorneys' fees, and costs warrants a downward adjustment to the lodestar.  *See Rodriguez v. Nancy A. Smith & Assocs.*, No. C12-5252RBL, 2012 WL 5207545, at *4 (W.D. Wash. Oct. 22, 2012) (deducting 25 percent of the total attorney fee award because "[a]lthough Plaintiff was successful, had her counsel been more reasonable in pursuing settlement, the cost of this litigation would have been substantially reduced").  Mr. Fulton's counsel's apparent obstinance produced a situation in which his requested attorneys' fees in the instant motion exceed the total demand he issued only months earlier for damages, attorneys' fees, and costs.  Of course, there is no guarantee

1    that Defendants would have made Mr. Fulton an offer of judgment even if he had broken

2    down his fees and costs.  Moreover, Defendants also bear some responsibility for

3    prolonging this case by making low initial settlement offers.  (*See* Ryan Decl. ¶ 4.)  The

4    court therefore finds it appropriate to exclude as "excessive, redundant, or otherwise

5    unnecessary" 25 percent of the hours that Mr. Anderson spent on Mr. Fulton's

6    case-in-chief after October 31, 2015.  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

7        Of the 153.3 hours initially submitted, Mr. Anderson spent 21.9 hours on the

8    initial fee petition and 37.5 hours on the case-in-chief by October 31, 2015.  (*See*

9    Anderson Billing Records at 1-10.)  Mr. Fulton's counsel therefore spent the remaining

10   93.9 hours on Mr. Fulton's case-in-chief after October 31, 2015.  The court deducts 25

11   percent of that amount—23.5 hours—from the overall lodestar.

12       3.  Limiting Fees-on-Fees

13       Lastly, Defendants advocate limiting Mr. Fulton's fees-on-fees based on the ratio

14   of fees awarded in the underlying fee dispute to the amount Mr. Fulton requested.  (Resp.

15   at 8.)  The court agrees that limiting Mr. Fulton's fees-on-fees is appropriate.

16       The court concluded that a reasonable hourly rate for Mr. Anderson in this case is

17   $300.00 per hour.  *See supra* § III.B.1.  The court will also apply that rate to the hours

18   reasonably expended by Mr. Anderson in preparing Mr. Fulton's motion for attorneys'

19   fees.  However, the court first excises several time entries that Mr. Anderson spent

20   //

21   //

22   //

preparing superfluous, verbose, or impermissible declarations.[6]  The court finds

unreasonable 2.2 of the 3.2 hours spent editing Mr. Fulton's initial declaration, 1.3 of the

2.3 hours spent drafting Mr. Anderson's initial declaration, the full 5.1 hours spent

preparing Mr. Fulton's and Mr. Welt's supplemental declarations, and 2.2 of the 3.3

hours spent preparing Mr. Anderson's supplemental declaration.  (*See* Anderson Billing

Records at 10; Anderson Supp. Decl. ¶ 3.)  In total, this amounts to a 10.8-hour deduction

before performing the final lodestar calculation.

       4.  <u>Calculations</u>

      Mr. Anderson spent 153.3 hours on the merits of this case and his motion for fees

and 18.9 hours on the reply brief to the fees petition.  (Anderson Billing Records at 10;

Anderson Supp. Decl. ¶¶ 2-3.)  The court concluded that Mr. Anderson's reasonable

hourly rate is $300.00, deducted 23.5 hours spent on Mr. Fulton's case-in-chief, and

deducted 10.8 hours spent on the fees petition.  *See supra* §§ III.B.1.-3.  The court

therefore awards Mr. Fulton $41,370.00 in reasonable attorneys' fees.[7]  Because

Defendants do not dispute the $2,102.77 that Mr. Fulton requested in costs, the court

awards that amount in full.

//

//

---

[6] For instance, Mr. Anderson provides more than a page reciting the "[p]hilosophy [b]ehind Anderson Law of King County, PLLC" (Anderson Decl. ¶¶ 21-26) and spent several hours (Anderson Billing Records at 10) editing Mr. Fulton's son's 25-page declaration, which adds almost nothing of value to the instant motion (*see* Fulton Decl. ¶¶ 1-73).

[7] (153.3 hours + 18.9 hours − 23.5 hours − 10.8 hours) * $300.00 per hour = $41,370.00.

**D.      Discovery Sanctions**

The final issue remaining in this case is the appropriate sanctions to impose on Mr. Ryan for his bad faith in briefing Defendants' motion to compel.  (*See* Hearing Tr. (Dkt. # 34); MTC (Dkt. # 27); Sanctions Memo.)

1.  <u>Inherent Power to Issue Discovery Sanctions</u>

Courts are vested with inherent powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-631 (1962)). The Ninth Circuit "has recognized as part of a district court's inherent powers the broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial."  *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992).  Additionally, a district court "has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct."  *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).

Sanctions issued under a court's inherent power "are available if the court specifically finds bad faith or conduct tantamount to bad faith."  *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107-08 (9th Cir. 2002) (quoting *Fink*, 239 F.3d at 994).  The court may therefore issue sanctions "for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose."  *Id.* (quoting *Fink*, 239 F.3d at 994).  For example, a finding of bad faith is warranted where an attorney "knowingly or recklessly raises a frivolous

1    argument, or argues a meritorious claim for the purpose of harassing an opponent."

2    *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997).  A party also

3    demonstrates bad faith by "delaying or disrupting the litigation or hampering

4    enforcement of a court order."  *Id.* (quoting *Hutto v. Finney,* 437 U.S. 678, 689 n.14

5    (1978)).

6         Although the Ninth Circuit has declined to decide the precise standard of proof for

7    sanctions awards, it is clear that a bad faith finding supported by clear and convincing

8    evidence will suffice.  *See Lahiri v.Universal Music & Video Distrib. Corp.*, 606 F.3d

9    1216, 1219 (9th Cir. 2010) (declining to resolve burden of proof issue because clear and

10   convincing evidence supported the district court's bad faith finding); *In re Lehtinen* 564

11   F.3d 1052, 1061 n.4 (9th Cir. 2009) (same); *Fink*, 239 F.3d at 989 (same).  Upon a

12   finding of bad faith, courts can levy an assortment of sanctions under their inherent

13   power, including monetary awards, attorneys' fees, adverse inference jury instructions,

14   and even dismissal of claims.  *Apple, Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132,

15   1135 (N.D. Cal. 2012) (collecting cases); *see also Chambers*, 501 U.S. at 43.

16         2.  Defendants' Misrepresentations to the Court and Prior Sanctions

17         On March 17, 2016, Defendants moved to either compel discovery or exclude

18   medical evidence presented by Mr. Fulton.  (*See* MTC.)  In that motion, Defendants

19   posited that Mr. Fulton "stated numerous times since the beginning of this case that he

20   was not seeking recovery for any medical condition, so his medical records and

21   treatments were not at issue."  (*Id.* at 2.)  As Defendants admit, they based their

22   conclusion that Mr. Fulton did not seek "recovery for any medical condition" on Mr.

1    Fulton's repeated indications that "he did not seek formal medical treatment for the

2    stress, worry and inconvenience brought on by Defendants' conduct."  (*Id.* (internal

3    quotations omitted); *see also id.* at 3 (indicating that Mr. Fulton's supplemental responses

4    "said that [Mr. Fulton] 'did not seek medical treatment related to the allegations in the

5    Complaint.'").)  However, Defendants' averment that Mr. Fulton did not seek "recovery

6    for any medical condition" (*id.* at 2) does not follow from Mr. Fulton's indication that he

7    did not seek treatment for the medical conditions allegedly caused by Defendants.  The

8    court found Defendants' inference—that because Mr. Fulton had not sought treatment, he

9    did not seek recovery for any medical condition—so unreasonable as to constitute a

10   misrepresentation to the court.  (Hearing Tr. at 5:2-3.)

11          Defendants proceeded to misstate the law in their reply brief on the motion to

12   compel.  Defendants cited caselaw that analyzed the version of Federal Rule of Civil

13   Procedure 26(a)(1) that existed before the highly publicized amendments took effect on

14   December 1, 2015.  (*See* MTC Reply (Dkt. # 30) at 2 (citing *Seattle Times Co. v.*

15   *Rhinehart*, 467 U.S. 20, 30 (1984)) ("Information and documents are discoverable if they

16   are relevant and non-privileged.").  As this court indicated at the April 5, 2016, hearing,

17   the December 1, 2015, amendments to Federal Rule of Civil Procedure 26(b)(1)

18   "dramatically changed" what information is discoverable.  (Hearing Tr. at 6:23-7:21.)

19   The court therefore found inexplicable Mr. Ryan's citations to outdated caselaw and

20   concluded that misrepresentation also warrants sanctions.  (*Id.* at 7:22-24.)

21          The court finds by clear and convincing evidence that at a minimum, Defendants

22   recklessly misrepresented the law and the facts to the court in an effort to limit the

ORDER- 15

1    evidence that Mr. Fulton could present at trial.  *See Fink*, 239 F.3d at 994 ("[A]n

2    attorney's reckless misstatements of law and fact, when coupled with an improper

3    purpose, . . . are sanctionable.").  Accordingly, in its April 5, 2016, hearing on

4    Defendants' motion to compel, the court sanctioned Mr. Ryan.  (Hearing Tr. at 16:22-23.)

5    The court ordered Mr. Ryan to provide Kevin Burke, Robert Shannon, and Paul Boken,

6    the individuals in charge of the Hinshaw & Culbertson office in Chicago, Illinois, a copy

7    of Mr. Fulton's motion to exclude "with the explanation that the court is entering

8    sanctions against a Hinshaw lawyer for quoting provisions of the civil rules that are badly

9    out of date, and also making direct misrepresentations to the court."  (*Id.* at 8:23-9:5.)

10   The court further awarded terms to Mr. Fulton for his fees and costs defending the

11   motion.[8]  (*Id.* at 9:5-7.)  Finally, the court threatened the additional sanction of requiring

12   Mr. Ryan to report this sanction on future pro hac vice applications.  (*Id.* at 16:22-17:3.)

13   Before determining whether to require Mr. Ryan to report the sanction on future pro hac

14   vice applications, however, the court permitted Mr. Ryan to file a supplemental written

15   response addressing that topic.  (*Id.* at 17:4-6.)

16        On April 20, 2016, Mr. Ryan filed a memorandum in response to the court's oral

17   ruling.  (Sanctions Memo.)  In that memorandum, Mr. Ryan argued that "[b]ecause [he]

18   acted in good faith and his conduct did not affect the administration of justice in this case,

19   the court should exercise its discretion to refrain from taking disciplinary action or, in the

20

21   _____

        [8] Mr. Fulton subsequently waived his entitlement to those fees and costs (*see* Waiver
22   (Dkt. # 32)), but the court still considers that award as part of the sanction levied for Mr. Ryan's
     misrepresentations to the court.

1   alternative, limit its disciplinary sanction to an informal, private admonition that is not

2   required to be reported on future pro hac vice applications." (*Id.* at 6.)  The court has

3   already "tak[en] disciplinary action" (*id.*) by awarding Mr. Fulton fees and costs and

4   "direct[ing] that [the reply brief] be provided to" Mr. Burke, Mr. Shannon, and Mr.

5   Boken "with the explanation that the court is entering sanctions against a Hinshaw lawyer

6   for quoting provisions of the civil rules that are badly out of date, and also making direct

7   misrepresentations to the court" (Hearing Tr. at 8:23-9:5).  The court's oral ruling in that

8   regard was unequivocal, and if Mr. Ryan has failed to comply with those sanctions he has

9   disobeyed the court's order.  The court granted Mr. Ryan leave to file a "supplemental

10  written response" only on whether Mr. Ryan must report the sanction on future

11  applications for pro hac vice status.[9]  (*Id.* at 16:22-17:6 ("If you want to file a written

12  response on [the reportability of the sanctions], that's fine, but for the rest of this, I'm

13  going to stay with my oral ruling . . . .").  Mr. Ryan has not filed a motion to reconsider.

14  *See* Local Rules W.D. Wash. LCR 7(h)(2) ("A motion for reconsideration shall be plainly

15  labeled as such.").  Accordingly, the court declines to reconsider its prior sanctions and

16  considers only whether to require further sanctions, such as requiring Mr. Ryan to report

17  this sanction on future pro hac vice applications.

18  //

19  //

20  _____

21      [9] Mr. Ryan acknowledges that the court permitted supplemental briefing only on the
    possible reporting requirement sanction.  (*See, e.g.*, Sanctions Memo at 1 ("The court granted

22  leave for Mr. Ryan to file a written submission on whether his conduct should be a reportable
    disciplinary sanction on future applications for pro hac vice admission in federal courts.").)

1     3.  <u>Further Sanctions on Mr. Ryan</u>

2         Mr. Ryan argues that his "mistakes of judgment" were "unintentional and arose

3  out of . . . good faith belief[s]."  (Sanctions Memo at 2 ("In any event, Mr. Ryan had no

4  intent to be deceptive or misrepresent the matters before the court.").)  He bases his

5  conclusion that he acted in good faith on the premise that his arguments were "arguably

6  proper."  (*Id.* at 7; *see also id.* at 13 ("Mr. Ryan's conduct was grounded in reasonable

7  considerations of fact and law.").)  Mr. Ryan argues based on his asserted good faith that

8  "his conduct did not affect the administration of justice in this case" and would not do so

9  in future cases, and that he therefore should not have to report the sanction on future pro

10  hac vice applications.  (*Id.* at 6, 13.)

11        Mr. Ryan seeks to justify his factual representations by distinguishing "medical

12  conditions" from "garden-variety emotional distress."  (*Id.* at 8-10.)  Although Mr. Fulton

13  had sought garden-variety emotional distress damages since the outset of the case, Mr.

14  Ryan argues that no medical condition—as Mr. Ryan understands that term—arose until

15  Mr. Fulton's deposition.  (*Id.* at 9.)  Based on this differentiation between those terms,

16  Mr. Ryan contends that his representations to the court were accurate.

17        Accepting arguendo this differentiation, Mr. Ryan indeed accurately represented

18  the types of damages that Mr. Fulton sought at the outset of the case.  However, the court

19  is unconvinced that the case law Mr. Ryan cites supports his differentiation between the

20  terms.  (*See id.* at 8-9.)  At best, the caselaw on "garden-variety emotional distress"

21  demonstrates that different courts treat the term differently in relation to "medical

22  conditions."  *See E.E.O.C. v. Wal-Mart Stores, Inc.*, 276 F.R.D. 637, 640 (E.D. Wash.

1   2011) (explaining how different approaches to "garden-variety emotional distress" taken

2   by courts in the Ninth Circuit impact the psychotherapist-patient privilege).  Mr. Ryan

3   failed to explain his definitional differentiation in his motion.  (*See generally* MTE.)  At a

4   minimum, the court finds this omission reckless, especially considering the motion in

5   which it was made sought to exclude evidence from being presented at trial.  However, a

6   review of Mr. Fulton's briefing demonstrates that Mr. Fulton shared Mr. Ryan's

7   understanding of the distinction between "medical conditions" and "garden-variety

8   emotional distress."  (*See* MTE Resp. (Dkt. # 29) at 3 ("Plaintiff . . . has stated that he

9   does not seek recovery for any medical bills or medical conditions . . . . Plaintiff seeks

10  recovery for what is often called 'garden-variety emotional distress' by many courts.").)

11  This common understanding tempers the degree of bad faith and the prejudice to Mr.

12  Fulton from Mr. Ryan's factual misrepresentations.

13          On the other hand, Mr. Ryan's citation to caselaw applying a prior version of

14  Federal Rule of Civil Procedure 26(b)(1) is inexcusable.  Mr. Ryan's explanation for the

15  error is unpersuasive.  He first argues that the amended version of Rule 26 "may not

16  apply to this action."  (Sanctions Memo at 10.)  The December 1, 2015, amendments

17  apply to "all proceedings . . . pending" as of December 1, 2015, "insofar as just and

18  practicable."  *Dao v. Liberty Life Assurance Co. of Bos.*, No. 14-CV-04749-SI (EDL),

19  2016 WL 796095, at *2 (N.D. Cal. Feb. 23, 2016) (quoting 2015 U.S. Order 0017).  Mr.

20  Ryan made no argument in his brief or at the April 5, 2016, hearing that applying the

21  amended Rule 26 would be unjust or impracticable.  (*See generally* MTC; Hearing Tr. at

22  14:21-15:19.)  Indeed, his brief made no reference whatsoever to the amended rule.  (*See*

1    *generally* MTC.)  Accordingly, the court finds Mr. Ryan's post hoc speculation that

2    pre-amendment Rule 26 might apply to this action to be unpersuasive evidence of Mr.

3    Ryan's good faith in citing pre-amendment Rule 26 caselaw in his brief.

4            Mr. Ryan next argues that even assuming the amended Rule 26 applies, he was

5    "merely citing general case law as an idea of what relevance is," and the 2015

6    amendments did not alter the relevance standard.  (Sanctions Memo at 11.)  This

7    characterization of Mr. Ryan's citations is disingenuous.  Mr. Ryan's thesis in the

8    offending section of his reply brief is not merely that the medical records were relevant.

9    (*See* Reply at 2-4.)  That section's heading argues that "[t]he documents sought are

10   relevant, non-privileged, and thus discoverable."  (*Id.* at 2; *see also id.* ("Information and

11   documents are discoverable if they are relevant and non-privileged.").)  In other words,

12   Mr. Ryan argues that the evidence is relevant (*id.* at 2-3) and non-privileged (*id.* at 3-4)

13   and therefore discoverable.  As amended, however, Rule 26(b)(1) further limits the scope

14   of discovery to information that is "proportional to the needs of the case, considering the

15   importance of the issues at stake in the action, the amount in controversy, the parties'

16   relative access to relevant information, the parties' resources, the importance of the

17   discovery in resolving the issues, and whether the burden or expense of the proposed

18   discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Mr. Ryan makes no

19   reference to the proportionality requirement.  (*See generally* MTC; Sanctions Memo.)

20   Mr. Ryan's argument that "courts continue to cite the pre-amendment relevancy

21   standard" is therefore minimally applicable because Mr. Ryan's misstatement to the court

22   pertained to more than just the "relevancy standard."  (*See* Sanctions Memo at 12.)  He

ORDER- 20

1  misrepresented the scope of discoverable information in a motion to compel or exclude

2  evidence.  Furthermore, rather than owning up to his misrepresentation, Mr. Ryan

3  disingenuously portrayed his briefing in an effort to excuse his error.  (*See* Sanctions

4  Memo at 11.)  This conduct is tantamount to bad faith.  *See B.K.B.*, 276 F.3d at 1107-08.

5          Despite Mr. Ryan's flawed efforts to excuse his comportment, the court concludes

6  that the previously imposed sanctions—requiring Mr. Ryan to compensate Mr. Fulton for

7  the fees and costs associated with Defendants' motion to compel and providing the

8  offending briefing to senior members of Mr. Ryan's law firm—nearly suffice to deter Mr.

9  Ryan from misrepresenting the facts or the law in the future.  The court therefore declines

10  to require Mr. Ryan to report this sanction on future pro hac vice applications.  However,

11  the court imposes one additional sanction:  if at any point in the next five (5) years a

12  federal court threatens or imposes sanctions on Mr. Ryan, he must immediately disclose

13  to that court the sanctions imposed by this court by providing that court with a copy of

14  this order and the offending briefing (Dkt. ## 27, 30).  This requirement will alert courts

15  presiding over future cases that Mr. Ryan's misrepresentations in this case constitute

16  strikes one and two against him.  Future courts will then be sufficiently informed to

17  properly sanction any further bad faith by Mr. Ryan.

18          Finally, neither the memorandum nor Mr. Ryan's sanctions declaration (*see* Ryan

19  Sanctions Decl. (Dkt. # 38)) indicate whether Mr. Ryan complied with the court's order

20  that he report the offending brief to Mr. Burke, Mr. Shannon, and Mr. Boken (*see* 4/5/16

21  Hearing Tr. at 8:23-9:5).  Parts of Mr. Ryan's memorandum intimate that he has not yet

22  complied with that aspect of the court's oral ruling.  (*See, e.g.*, Sanctions Memo at 1

ORDER- 21

1   (requesting that the court "decline to impose discipline").)  Accordingly, before the court

2   considers the matter of sanctions fully closed, the court orders that an affidavit be filed

3   within 20 days, signed by Mr. Burke, Mr. Shannon, and Mr. Boken, confirming that they

4   have reviewed the court's prior and current orders.  Failure to do so may result in

5   sanctions against Hinshaw & Culbertson for Mr. Ryan's conduct.

6                          **IV.    CONCLUSION**

7          Based on the foregoing analysis, the court GRANTS in part and DENIES in part

8   Mr. Fulton's motion for attorneys' fees and costs, AWARDS Mr. Fulton $41,370.00 in

9   attorney's fees and $2,102.77 in costs, and SANCTIONS Mr. Ryan as described above.

10  The court further ORDERS Mr. Burke, Mr. Shannon, and Mr. Boken to file an affidavit

11  as described above within 20 days of the date of this order.

12         Dated this 25th day of July, 2016.

13

14

15                                          _____

16                                          JAMES L. ROBART
                                            United States District Judge

17

18

19

20

21

22

ORDER- 22